# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | WILLIAM T. HART | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 5538 | **DATE** | FEB. 1, 2001 |
| **CASE TITLE** | **DENISE BERRY, et al. v. ILLINOIS DEPT. OF HUMAN SERVICES, et al.** | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ■ Status hearing set for MARCH 21, 2001 at 11:00 A.M..

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] **Motion to dismiss and for severance [9] granted in part and denied in part. Motion to consolidate for relatedness [12] denied. Motion to stay [13] denied. Causes of action of plaintiffs Catlett, Mungai, and Velasco dismissed, Clerk to enter judgment (See Opinion). Complaint dismissed without prejudice. §§ 1985 and 1986 claims are dismissed with prejudice. Plaintiffs Berry, Boland, Brodzik, Camacho, Cullin, Gill, Hopson, Kirsch, Kartan, Lauder, Marquez, Morgan, Noble, Obaid, Pendleton, Piskorek, Poe, Settles, and Terrell are severed. Plaintiffs Carreon, Diab, Hayes, Willie Johnson, Tony Johnson, Loveless, Nixon, Simmons, Taylor, Thompson, and Wright to amend by February 26, 2001. Defendants shall answer or otherwise plead by March 12, 2001. See Opinion for particulars.**

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | 2 | | **Document Number** |
|---|---|---|---|---|---|---|
| | No notices required. | | | number of notices | | |
| ✓ | Notices mailed by judge's staff. | | | FEB 0 2 2001 | | |
| | Notified counsel by telephone. | | | date docketed | | 17 |
| | Docketing to mail notices. | | | MW | | |
| ✓ | Mail AO 450 form. | | | docketing deputy initials | | |
| | Copy to judge/magistrate judge. | | | Feb. 1, 2001 | | |
| | | | | date mailed notice | | |
| CW | courtroom deputy's initials | | 01 FEB -1 PM 5: 21 | MQM6 | | |
| | | | Date/time received in central Clerk's Office | mailing initials | | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**DOCKETED**

**FEB 0 2 2001**

DENISE BERRY, et al., )
)
           Plaintiffs, )
)
    v. )    No. 00 C 5538
)
ILLINOIS DEPARTMENT OF HUMAN )
SERVICES, et al., )
)
           Defendants. )

## MEMORANDUM OPINION AND ORDER

The 33 plaintiffs in this action are current or former
employees at six facilities of the Illinois Department of Human
Services ("IDHS"). This action was filed on September 8, 2000.
Named as defendants are the IDHS; the former Director of IDHS;
the current Director of IDHS; the EEO Director of IDHS; the
Personnel and Human Resources Director, Facility Director, and
Assistant Facility Director of Howe Development Center ("Howe
Center"); the Personnel and Human Resources Director and Facility
Director of the Tinley Park Mental Health Center ("Tinley
Center"); the Personnel and Human Resources Director and Facility
Director of the Elgin Mental Health Center ("Elgin Center"); the
Personnel and Human Resources Director and Facility Director of

the Chicago Read Mental Health Center ("Read Center"); the
Personnel and Human Resources Director, Facility Director, and
three management level employees of the Elizabeth Ludeman Mental
Health Center ("Ludeman Center"); and the Hospital Administrator,
Personnel and Human Resources Director, and Facility Director of
the Madden Mental Health Center ("Madden Center").  The
individual defendants are named in both their individual and
official capacities.  It is specifically alleged that
compensatory and punitive damages are sought against the
individual capacity defendants.  Complaint ¶ 1.  As to IDHS and
the official capacity claims, only injunctive and declaratory
relief is sought.  Id.

     According to the allegations of the Complaint, IDHS
employees are subject to progressive discipline.  The immediate
supervisor's recommendation is submitted to the facility's
management staff and must be approved by the Director of IDHS.
As to each plaintiff, the Complaint includes a brief description
of the discipline the employee received.  No dates are alleged
stating when any of this discipline occurred.[1]  As to all

---

[1]In paragraphs 92 and 93 of the Complaint, it is alleged
the former IDHS Director Howard Peters was Director "at relevant
times of this complaint" and that current IDHS Director Linda
Renee Baker is the incumbent Director at the time of the
Complaint.  This implies that all the discipline occurred while
Peters was still Director, but even if that is what is meant, the
dates he was Director are not alleged.  Also, it is possible that
some of the disciplinary proceedings are still ongoing.
Regarding sections 1985 and 1986, it is alleged that these
statutes were in effect prior to July 1997 through the present.
See Complaint ¶¶ 120, 131.  This implies that events occurring as

plaintiffs, it is generally alleged that they were disciplined or received harsher discipline than others because of asserting union rights, opposing discrimination, or speaking out on issues of public concern. Count One is labeled as a violation of 42 U.S.C. § 1985(3). It is generally alleged that:

> 113. All of the above Plaintiffs engaged in protected activity under the First Amendment to the U.S. Constitution.

> 114. Defendants have acted in concert to prevent employees from asserting these rights guaranteed by the U.S. Constitution by disciplining and discharging individuals who assert such rights differently than those who do not assert such rights.

> 115. Defendants were motivated by a class based discriminatory animus against employees who exercise their First Amendment rights which was designed to deprive of equal protection of the laws, directly or indirectly, any employee who exercised [his or her] First Amendment [right] to associate for engaging in union activity, oppose discrimination or express matters of public interest which criticized Defendants.

Complaint ¶¶ 113-15. Count Two is labeled as a violation of 42 U.S.C. § 1986, for failing to prevent the alleged violations of § 1985.

---

early as July 1997 may be alleged. But even if this is assumed to be true, these allegations do not identify when the discipline became final nor which plaintiff's discipline or conduct began as early as July 1997. However, to the extent a related judicial proceeding for which judicial notice is taken conclusively shows when a particular event (e.g., a discharge) occurred, such dates may be taken as true for purposes of ruling on the motion to dismiss.

Defendants have moved to dismiss the Complaint, raising various grounds. They contend that no § 1985(3) claim is stated (a) because such a claim may not be based solely on First Amendment violations, but must allege class-based discrimination and (b) because no conspiracy is adequately alleged because there cannot be a conspiracy among employees of the same organization. It is argued that the § 1986 claim fails to the extent no § 1985(3) claim is adequately alleged. It is also contended that both the § 1985 and § 1986 claims are barred by their respective statutes of limitations. As to IDHS and the official capacity claims, it is argued that the claims are precluded by the Eleventh Amendment. As to certain defendants, it is contended that personal involvement is not adequately alleged. Many of the plaintiffs in the case sub judice are also plaintiffs in other actions filed in this court concerning their employment at IDHS (often pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII")). Some of the other actions are still pending and some have been dismissed. To the extent the present claims are not dismissed on the merits, defendants contend that the claims of these plaintiffs should be dismissed on grounds of collateral estoppel or res judicata based on the dismissed cases or as duplicative of the cases that are still pending, or that the claims of the various plaintiffs should be severed.

Also pending is plaintiffs' motion to consolidate for relatedness cases filed by three of the plaintiffs. See N.D.

Ill. L.R. 40.4. Those three cases are all higher numbered than the case sub judice. Defendants have moved to stay ruling on that motion until after ruling on defendants' motion to dismiss.

## I. PLAINTIFFS AND THEIR RELATED CASES

Plaintiffs are employed at the following IDHS facilities and have filed the following cases besides the case sub judice.[2] Judicial notice is taken of pleadings and orders filed in the related cases cited by plaintiffs and defendants.[3] See Scholes v. Lehmann, 56 F.3d 750, 762 (7th Cir.), cert. denied, 516 U.S. 1028 (1995); Green v. Warden, 699 F.2d 364, 369 (7th Cir.), cert. denied, 461 U.S. 960 (1983); Hebein ex rel. Berman v. Young, 37 F. Supp. 2d 1035, 1038 (N.D. Ill. 1998). No attempt has been made to independently determine whether there are any other related cases besides the ones cited by the parties.

---

[2]"Case sub judice" will be used to refer to the case that is before this bench, that is Berry v. IDHS, No. 00 C 5538 (N.D. Ill.). When referring to the Complaint in 00 C 5538, Complaint will be capitalized.

[3]As to each of the related cases, one of this court's computerized databases for dockets (CHASER) was checked on the morning of January 31, 2001. Items entered on the docket January 31, 2001 or later would not have been found even if they pertain to documents or orders dated earlier. For cases on appeal, the Seventh Circuit website (http://www.ca7.uscourts.gov/dkt.htm) was checked on the morning of January 31, 2001.

## A. Howe Center

Plaintiffs Denise Berry, Catherine Gill, Derrick Hopson, Lillian Morgan, Alfreda Noble, and Wanda Poe allegedly were disciplined while Howe Center employees. It is alleged that Poe was discharged. The others apparently still are Howe Center employees.

Berry, Gill, Morgan, Noble, and two others who are not parties to the case sub judice are plaintiffs in Berry v. Lindemann, No. 00 C 5540 (N.D. Ill.) (Zagel, J.). 00 C 5540 was filed on September 8, 2000, the same date as the case sub judice. It is one of the three cases that plaintiffs move to reassign as related. Named as defendants are the IDHS, employees of the Howe Center who are not defendants in the present case, and a number of Illinois State Police employees. The amended complaint in 00 C 5540 alleges all six plaintiffs are African-Americans. The four plaintiffs who are parties to the case sub judice allege that, on October 27, 1999, they properly subdued a patient, but were falsely charged with assaulting the patient, both in administrative proceedings and criminally. The other two plaintiffs allege they were disciplined for refusing to falsely testify against the other four. Count One is denominated as a false arrest and malicious prosecution claim in violation of 42 U.S.C. § 1983 and is against all defendants except IDHS. Count Two is against IDHS only and is denominated as a Title VII claim for race discrimination in that plaintiffs were disciplined more harshly than similarly situated White employees. Judge Zagel

apparently has stayed any action pending the ruling on the relatedness motion in the case _sub judice_. See Berry v. Lindemann, No. 00 C 5540 (N.D. Ill. Jan. 9, 2001).

### B. Tinley Center

Plaintiffs Lester Brodzik, Bonnie Camacho, and Eileen Piskorek allegedly were disciplined while Tinley Center employees. All of them apparently are still employed at the Tinley Center.

Brodzik is the sole plaintiff in a pending action against IDHS that was filed on March 31, 2000. See Brodzik v. IDHS, No. 00 C 1961 (N.D. Ill.) (Schenkier, M.J.).[4] Brodzik alleges that, effective September 4, 1999, he received a 20-day suspension for allowing a patient to escape. He alleges the harsh discipline was because of gender discrimination. Discovery was to be completed by November 22, 2000. Presently, a settlement conference has been set for February 26, 2001.

On October 2, 2000, Camacho filed suit against the IDHS. See Camacho v. IDHS, No. 00 C 6032 (N.D. Ill.) (Holderman, J.). 00 C 6032 is one of the three cases that plaintiffs move to reassign as related. In 00 C 6032, Camacho alleges that, following a January 10, 2000 incident, she was transferred to another unit at Tinley Center for patients who are more difficult to handle, allegedly based on racial discrimination because she

---

[4]Initially, the case was referred to Magistrate Judge Schenkier for supervision of discovery and a settlement conference. The parties subsequently consented to the case being reassigned to Judge Schenkier for all purposes.

is Caucasian and in retaliation for opposing racial discrimination.  There is a pending motion to dismiss in 00 C 6032, which has been deemed fully briefed and is awaiting ruling.

## C. Elgin Center

Plaintiffs Sharon Marquez and Fe Velasco allegedly were disciplined while working at the Elgin Center.  It is alleged that Velasco was discharged.  Marquez apparently still is employed at Elgin.

On June 30, 1999, Velasco brought suit against IDHS.  <u>See</u> <u>Velasco v. IDHS</u>, No. 99 C 4314 (N.D. Ill.) (Conlon, J.).  In 99 C 4314, Velasco alleged discrimination based on gender (female) and race[5] in violation of Title VII (Count I), based on race in violation of 42 U.S.C. § 1981 (Count II), retaliation in violation of Title VII and § 1981 (Count III), and discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 <u>et seq.</u> (Count IV).  <u>See</u> <u>Velasco v. IDHS</u>, No. 99 C 4314 at 1 (N.D. Ill. Sept. 20, 1999) (Docket Entry 10).[6]  On a motion to dismiss, Count I was dismissed as untimely because the lawsuit was filed more than 90 days after plaintiff received a notice of right to sue.  <u>See</u> <u>id.</u> at 4-8.  The Count II and III § 1981 claims were dismissed on the ground of Eleventh Amendment

---

[5]The ruling on IDHS's motion to dismiss states that Velasco is Filipino-American.  <u>See</u> <u>Velasco v. IDHS</u>, No. 99 C 4314 at 2 (N.D. Ill. Sept. 20, 1999) (Docket Entry 10).

[6]The complaint itself is presently part of the record on appeal and was unavailable.

immunity.  See id. at 9.  On January 14, 2000, summary judgment was granted on the remaining claims and judgment was entered on January 20, 2000.  See Velasco v. IDHS, 2000 WL 89692 (N.D. Ill. Jan. 20, 2000) ("Velasco II").  According to Velasco II, Velasco was discharged effective October 25, 1998.  Id. at *1.  Summary judgment was granted on Velasco's claim of Title VII retaliation for filing prior complaints of discrimination on the ground that no genuine factual dispute existed that the grounds for Velasco's discharge were a pretext for retaliation.  See id. at *7-9. Summary judgment was granted on Velasco's ADA claim on the ground that she could not show that she was a qualified individual with a disability.  See id. at *10.  An appeal is pending before the Seventh Circuit.  Oral arguments were held on September 26, 2000. See Velasco v. IDHS, No. 00-1391 (7th Cir.).

D. Read Center

Plaintiffs Frederick Cullin,[7] Usha Kartan, and Mir Obaid allegedly were disciplined while employed at the Read Center. They apparently are all still employed at the Read Center.

On September 15, 2000, Cullin brought suit against IDHS. See Cullins v. IDHS, No. 00 C 5680 (N.D. Ill.) (Lefkow, J.). 00 C 5680 is one of the three cases that plaintiffs move to reassign as related.  In 00 C 5680, Cullin alleges discrimination because he is African-American and that he suffered retaliation

---

[7]The Complaint in the case sub judice refers to him as "Cullin."  Defendants' brief and other cases refer to him as "Cullins."

for opposing discrimination. He alleges he was disciplined sometime between July 1999 and January 20, 2000, that he received a discriminatorily low raise after being evaluated in June 2000, and that the discrimination continues. The counts of the complaint are denominated as follows: (I) Title VII race discrimination; (II) § 1981 race discrimination; (III) Title VII and § 1981 retaliation; and (IV) § 1983 retaliation because of engaging in protected First Amendment expression. In an order dated November 21, 2000, Judge Lefkow dismissed Count II on the ground that it was duplicative of the case sub judice. She indicated Count I was also duplicative, but declined to dismiss it to avoid possible statute of limitations problems for Cullin. Instead, she ordered that it would be dismissed if no relatedness motion was filed within 30 days. Since such a motion was filed and is still pending in the case sub judice, no further action has yet been taken in 00 C 5680.

On February 15, 2000, Kartan and Obaid brought suit against IDHS and Randy Thompson, the Read Center Medical Director. See Kartan v. IDHS, No. 00 C 939 (N.D. Ill.) (Rosemond, M.J.).[8] Randy Thompson is not a party to the case sub judice. He is alleged to be Kartan's and Obaid's supervisor. In 00 C 939, Kartan and Obaid allege they were discriminatorily disciplined because they are East Indian and in retaliation for opposing discrimination. The counts of the complaint are

---

[8] In November 2000, the parties consented to the case being reassigned to Magistrate Judge Rosemond.

denominated as follows: (I) Title VII race discrimination
(IDHS); (II) § 1981 race discrimination (Thompson); (III)
Title VII retaliation (IDHS); (IV) § 1983 retaliation
because of engaging in protected First Amendment expression
(Kartan/Thompson); and (V) § 1983 retaliation because of engaging
in protected First Amendment expression (Obaid/Thompson).
Discovery was closed on October 31, 2000. On January 23, 2001,
defendants were granted leave to file an amended answer and a
motion to sever by no later than March 1, 2001.

### E. Ludeman Center

Plaintiffs Joanne Boland, Patricia Kirsch, Arlette
Lauder, Diane Pendleton, James Settles, and Elizabeth Terrell
allege they were disciplined while employed at the Ludeman
Center. It is alleged that Lauder and Pendleton were discharged.
The others apparently are still employed at the Ludeman Center.

On November 17, 1999, Kirsch and Lauder brought suit
against IDHS, then-IDHS Director Peters, and supervisor Margaret
McMillan, all of whom are named as defendants in the case sub
judice. See Lauder v. IDHS, No. 99 C 7514 (N.D. Ill.)
(Pallmeyer, J.). In 99 C 7514, Lauder alleges she was
discriminated against for associating with African-Americans, in
particular because she has a granddaughter whose father is
African-American. She also alleges she was discriminated against
based on a disability. Lauder alleges she was discharged
effective July 16, 1999. In 99 C 7514, Kirsch alleges she was
retaliated against for reporting (as part of administrative EEO

proceedings) racially derogatory comments McMillan allegedly made to Lauder. The report would have occurred sometime between May 27 and July 16, 1999, but the retaliation is alleged to have occurred continuously thereafter, at least as of the November 1999 filing of the complaint. The counts of the complaint are denominated as follows: (I) Lauder's associational discrimination claim pursuant to Title VII and § 1981; (II) Kirsch's Title VII and § 1981 retaliation claim; (III) both plaintiffs' § 1983 retaliation claim based on exercising First Amendment rights (Peters & McMillan); and (IV) Lauder's ADA discrimination claim (IDHS). On May 11, 2000, Count IV was dismissed as barred by the Eleventh Amendment. Subsequently, the close of discovery continued to be extended as the parties engaged in settlement negotiations. On December 6, 2000, 99 C 7514 was dismissed without prejudice with leave to reinstate within 30 days, and the court retained jurisdiction to enforce any settlement. On January 24, 2001, the following order was issued: "No motion for reinstatement having been filed within the time set by this court's 12/6/00 order, dismissal is with prejudice." No separate Rule 58 judgment has been entered. Plaintiffs represent in their December 26, 2000 answer brief that claims of Kirsch and Lauder have been settled, "but some issues still remain and settlement checks have not been received." Pl. Answer Br. at 8 n.2. They further represent that Kirsch's and Lauder's claims in the case sub judice will be voluntarily

dismissed once the settlement is resolved.  Id.  Neither side has provided a copy of any settlement document.

On January 24, 2000, Settles brought suit against IDHS. See Settles v. IDHS, No. 00 C 433 (N.D. Ill.) (Pallmeyer, J.). In 00 C 433, Settles alleges that he is an African-American who, in June 1999, was denied a promotion to a craft position because of intentional racial discrimination, disparate impact, and retaliation for opposing discrimination, all in violation of Title VII.  Discovery in 00 C 433 was closed on November 30, 2000.  On December 22, 2000, defendants moved for summary judgment and the final brief for that motion is presently due on March 19, 2001.

### F. Madden Center

Plaintiffs Evelyn Carreon, Arthur Catlett, Nasser Diab, Agnes Hayes, Willie Johnson, Tony Johnson, Ruth Loveless, Joseph Mungai, Essie King Nixon, Ron Simmons, Henry Taylor, William Thompson, and Bobby Wright allege they were disciplined while employed at the Madden Center.  It is alleged that Catlett, Diab,[9] Hayes, Willie Johnson, Tony Johnson, Loveless, Mungai, Nixon, Taylor, and Wright were discharged.  The others apparently are still working at Madden.

On May 28, 1998, Catlett brought suit against then-Director Peters, Madden Facility Director Ugo Formigoni, and four

---

[9]Diab allegedly was discharged, reinstated following Illinois Civil Service Commission proceedings, and then discharged again.

other IDHS employees who are not parties to the case <u>sub judice</u>.
<u>See</u> <u>Catlett v. Peters</u>, No. 98 C 3273 (N.D. Ill.) (Urbom, J.).  In
98 C 3273, Catlett alleged that, in 1997, he was discharged in
violation of § 1983.  Catlett claimed his discharge hearing was
in violation of due process and that he was subjected to an equal
protection violation in that he was treated discriminatorily for
participating in union activities.  <u>See</u> <u>Catlett v. Peters</u>, 32
F. Supp. 2d 1010, 1011 (N.D. Ill. 1998) ("<u>Catlett I</u>"); <u>Catlett v.
Peters</u>, 1999 WL 1269196 *1-2 (N.D. Ill. Dec. 23, 1999)
("<u>Catlett II</u>").  Defendants' motion to dismiss was denied except
as to official capacity claims for damages which were barred by
the Eleventh Amendment.  <u>See</u> <u>Catlett I</u>, 32 F. Supp. 2d at
1011-12, 1014-15.  On summary judgment, it was held that the due
process claim failed because undisputed facts showed that
adequate due process procedures were available, but that Catlett
failed to invoke them.  <u>See</u> <u>Catlett II</u>, 1999 WL 1269196 at *6-7.
The equal protection claim was dismissed on summary judgment on
the ground that Catlett failed to show that other similarly
situated employees were treated more favorably.  <u>See</u> <u>id.</u> at *8.
Although these two rulings resolved all the claims expressly
stated in the complaint, the court recognized that Catlett might
still have a viable claim for First Amendment retaliation.  <u>See</u>
<u>id.</u>  Catlett was permitted to amend his complaint to state a
retaliation claim.  A subsequent order recognized that the
remaining retaliation claim was only against one new defendant,
current IDHS Director Baker, and two other IDHS employees who are

not defendants in the case <u>sub judice</u>. <u>See</u> <u>Catlett v. Peters</u>,
No. 98 C 3273 (N.D. Ill. March 16, 2000) (Docket Entry 44).
Following a trial before a jury, a verdict was returned in favor
of the three remaining defendants and, on April 11, 2000,
judgment was entered. <u>See</u> <u>id.</u> (Docket Entries 59-60). Catlett
appealed, but may have only appealed the retaliation issue since
the only listed appellees are the three defendants who went to
trial on the retaliation claim. <u>See</u> <u>Catlett v. Woodfin</u>, No.
00-2145 (7th Cir.).[10]

On January 30, 1998, Diab brought suit against the IDHS.
<u>See</u> <u>Diab v. IDHS</u>, No. 98 C 605 (N.D. Ill.) (Norgle, J.). In
98 C 605, Diab alleges he was discriminated against and
ultimately discharged in October 1997[11] because of being
Lebanese-American and in retaliation for opposing the initial
discrimination. The counts of his complaint are denominated as
(I) Title VII national origin discrimination; (II) § 1981 race
discrimination; and (III) Title VII and § 1981 retaliation.
Discovery in 98 C 605 was closed on May 31, 1999. Briefing on
defendant's summary judgment motion was subsequently stayed
pending Diab's hearing before the Illinois Civil Service
Commission. <u>See</u> <u>Diab v. IDHS</u>, No. 98 C 605 (N.D. Ill. June 9,

---

[10]It is unclear from the Seventh Circuit docket sheet
whether the merits are being briefed or only the issue of
appellate jurisdiction.

[11]The October 1997 discharge apparently was the first
discharge prior to being reinstated by the Illinois Civil Service
Commission and then subsequently being discharged again.

2000) (Docket Entry 29). An August 17, 2000 Order was entered requiring the parties to appear on August 25, 2000 to show cause why the case should not be dismissed for failure to prosecute or because otherwise resolved. See id. (Docket Entry 31). An August 25, 2000 Order states no one appeared and dismisses the case. See id. (Docket Entry 32). No separate Rule 58 judgment was entered. On September 1, 2000, Diab moved to vacate the dismissal. The court set a briefing schedule, with Diab's reply due on September 29, 2000. See id. (Docket Entry 34). IDHS filed its answer brief, but Diab filed no reply. The motion to vacate remains pending.

On July 20, 1998, Mungai brought suit against IDHS. See Mungai v. IDHS, No. 98 C 4429 (N.D. Ill.) (Guzman, J.). In 98 C 4429, Mungai alleges that, in violation of Title VII, he was discriminated against and ultimately discharged in June 1998 because he is male and in retaliation for opposing discrimination. Discovery was closed on April 12, 2000. Defendant moved for summary judgment, with the final brief being filed on October 4, 2000. No ruling has yet been issued.

On April 19, 1999, Thompson, proceeding pro se, brought suit against the Madden Center and two individuals who are not named as defendants in the case sub judice. See Thompson v. John J. Madden Mental Health Center, No. 99 C 2558 (N.D. Ill.) (Kennelly, J.). The pro se complaint alleges discrimination on or about April 20, 1998 and refers to three specific incidents, including one that is labeled as retaliation. Using this court's

form employment discrimination complaint, Thompson checked that the discrimination was based on race[12] in violation of Title VII, § 1981, and § 1983. Thompson subsequently retained counsel and, though no amended complaint was filed, all claims were dismissed except the Title VII claim against the Madden Center. See id. (Aug. 3, 1999) (Docket Entry 15). On defendant's motion for summary judgment, the Title VII claims in 99 C 2558 were dismissed. See Thompson v. John J. Madden Mental Health Center, 2000 WL 1780348 (N.D. Ill. Dec. 4, 2000). The claims referred to in the summary judgment ruling are a seven-day suspension in 1998 that allegedly was based on racial discrimination and retaliation for prior complaints of race and gender discrimination. See id. at *1. The racial discrimination claim was dismissed on the ground that Thompson could not make out a prima facie case of discrimination in that he could not show similarly situated non-African-American employees who were treated more favorably. See id. at *3-4. The retaliation claim was dismissed on the ground that there was no evidence that the supervisor who ordered the suspension was aware of Thompson's prior complaint of discrimination. See id. at *5. Judgment was entered on December 4, 2000 and an appeal is pending. See Thompson v. John J. Madden Mental Health Center, 00-4297 (7th Cir.). Presently, the final brief in the appeal is due May 7, 2001.

---

[12]Documents attached to the complaint indicate Thompson is African-American.

## II. MOTION TO DISMISS STANDARD

In ruling on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a plaintiff's well-pleaded allegations of fact are taken as true and all reasonable inferences are drawn in the plaintiff's favor. <u>Leatherman v. Tarrant County Narcotics & Intelligence Unit</u>, 507 U.S. 163, 164-65 (1993); <u>Stachon v. United Consumers Club, Inc.</u>, 229 F.3d 673, 675 (7th Cir. 2000); <u>Swofford v. Mandrell</u>, 969 F.2d 547, 549 (7th Cir. 1992). A complaint need not set forth all relevant facts or recite the law; all that is required is a short and plain statement showing that the party is entitled to relief. Fed. R. Civ. P. 8(a); <u>Anderson v. Simon</u>, 217 F.3d 472, 474 (7th Cir. 2000), <u>cert. denied</u>, 121 S. Ct. 765 (2001); <u>Scott v. City of Chicago</u>, 195 F.3d 950, 951 (7th Cir. 1999); <u>Kirksey v. R.J. Reynolds Tobacco Co.</u>, 168 F.3d 1039, 1041 (7th Cir. 1999); <u>Doherty v. City of Chicago</u>, 75 F.3d 318, 322 (7th Cir. 1996). A plaintiff in a suit in federal court need not plead facts; conclusions may be pleaded as long as the defendant has at least minimal notice of the claim. Fed. R. Civ. P. 8(a)(2); <u>Scott</u>, 195 F.3d at 951; <u>Kirksey</u>, 168 F.3d at 1041; <u>Albiero v. City of Kankakee</u>, 122 F.3d 417, 419 (7th Cir. 1997); <u>Jackson v. Marion County</u>, 66 F.3d 151, 153-54 (7th Cir. 1995). It is unnecessary to specifically identify the legal basis for a claim. <u>Forseth v. Village of Sussex</u>, 199 F.3d 363, 368 (7th Cir. 2000); <u>Scott</u>, 195 F.3d at 951; <u>B. Sanfield, Inc. v. Finlay Fine Jewelry Corp.</u>, 168 F.3d 967, 973 (7th Cir. 1999);

Albiero, 122 F.3d at 419; Bartholet v. Reishauer A.G. (Zürich), 953 F.2d 1073, 1078 (7th Cir. 1992).

It is also true, however, that a party can plead him or herself out of court by alleging facts showing he or she has no viable claim. Jackson, 66 F.3d at 153-54; Tregenza v. Great American Communications Co., 12 F.3d 717, 718 (7th Cir. 1993), cert. denied, 511 U.S. 1085 (1994); Early v. Bankers Life & Casualty Co., 959 F.2d 75, 79 (7th Cir. 1992). Further, as long as they are consistent with the allegations of the complaint, a plaintiff may assert additional facts in his or her response to a motion to dismiss. Brokaw v. Mercer County, 235 F.3d 1000, 2000 WL 1848464 *1 (7th Cir. Dec. 19, 2000); Forseth, 199 F.3d at 368; Gutierrez v. Peters, 111 F.3d 1364, 1367 n.2 (7th Cir. 1997); Albiero, 122 F.3d at 419; Travel All Over the World, Inc. v. Kingdom of Saudi Arabia, 73 F.3d 1423, 1428 (7th Cir. 1996); Highsmith v. Chrysler Credit Corp., 18 F.3d 434, 439-40 (7th Cir. 1994); Hrubec v. National Railroad Passenger Corp., 981 F.2d 962, 963-64 (7th Cir. 1992). Although the complaint itself need not specifically or correctly identify the legal basis for any claim, in response to a motion to dismiss that raises issues as to a claim, the plaintiff must identify the legal basis for the claim and make adequate legal arguments in support of it. Kirksey, 168 F.3d at 1041-42; Stransky v. Cummins Engine Co., 51 F.3d 1329, 1335 (7th Cir. 1995); Levin v. Childers, 101 F.3d 44, 46 (6th Cir. 1996); Thompson v. Huntington, 69 F. Supp. 2d 1071, 1074 (S.D. Ind. 1999); Carpenter v. City of Northlake, 948 F. Supp.

759, 765 (N.D. Ill. 1996).  See also Teumer v. General Motors Corp., 34 F.3d 542, 545-46 (7th Cir. 1994).  While a motion to dismiss is generally decided on the pleadings alone, judicial notice may be taken of other court proceedings if the proceedings are directly related to the case.  Scholes, 56 F.3d at 762; Green, 699 F.2d at 369; Hebein, 37 F. Supp. 2d at 1038.  Also, documents that are referred to in the complaint and that are central to a claim that is made may be considered even if not attached to the complaint.  Duferco Steel Inc. v. M/V Kalisti, 121 F.3d 321, 324 n.3 (7th Cir. 1997); Venture Associates Corp. v. Zenith Data Systems Corp., 987 F.2d 429, 431 (7th Cir. 1993); Hebein, 37 F. Supp. 2d at 1038-39.

## III.  ELEVENTH AMENDMENT

In addition to naming IDHS as a defendant, plaintiffs have named all the other defendants in their official capacities.  However, an official capacity claim is the same as a claim against the state entity itself.  Power v. Summers, 226 F.3d 815, 818 (7th Cir. 2000); Smith v. Metropolitan School District Perry Township, 128 F.3d 1014, 1021 n.3 (7th Cir. 1997), cert. denied, 524 U.S. 951 (1998).  Since IDHS is already a defendant, the official capacity allegations are redundant and therefore will be dismissed without prejudice.  See id.; A. Kelley's Garage, Inc. v. City of Northlake, 2000 WL 1889671 *6 (N.D. Ill. Dec. 28, 2000); Spizzirri v. Village of Bensenville, 109 F. Supp. 2d 908, 910 (N.D. Ill. 2000); Chandler v. Board of Education of City of

Chicago, 92 F. Supp. 2d 760, 764 (N.D. Ill. 2000); Tabor v. City of Chicago, 10 F. Supp. 2d 988, 991 (N.D. Ill. 1998).

As is stated in ¶ 1 of the Complaint and repeated in plaintiffs' response to the motion to dismiss, as to IDHS, only declaratory and injunctive relief is sought. No monetary damages are sought as against IDHS. It is questionable whether all plaintiffs would be entitled to declaratory or injunctive relief. In particular, those plaintiffs that are no longer employed by IDHS would not have standing to seek an injunction modifying IDHS's future conduct. Perhaps, though, some or all of the discharged employees are seeking reinstatement, a form of injunctive relief. In any event, at least some of the plaintiffs have standing to seek declaratory or injunctive relief. The Eleventh Amendment is not a bar to seeking such relief against a state entity. Power, 226 F.3d at 818-20; Catlett I, 32 F. Supp. 2d at 1012. The Eleventh Amendment does not bar the pending claims against IDHS.

## IV. 42 U.S.C. §§ 1985 & 1986

Section 1985(3) provides in part:

If two or more persons in any State or Territory conspire . . ., for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; . . . in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in

his person or property, or deprived of having and
exercising any right or privilege of a citizen of
the United States, the party so injured or
deprived may have an action for the recovery of
damages occasioned by such injury or deprivation,
against any one or more of the conspirators.

The elements of a § 1985(3) claim are: "(1) a

conspiracy; (2) a purpose of depriving, either directly or

indirectly, any person or class of persons of the equal

protection of the laws, or of equal privileges and immunities

under the laws; (3) an act in furtherance of the conspiracy; and

(4) an injury to his person or property or a deprivation of any

right or privilege of a citizen of the United States."

Indianapolis Minority Contractors Association, Inc. v. Wiley, 187

F.3d 743, 754 (7th Cir. 1999) (quoting Trautvetter v. Quick, 916

F.2d 1140, 1153 (7th Cir. 1990)). The conspiracy must be

motivated by "a racial or other class-based animus." Kyle v.

Morton High School, 144 F.3d 448, 457 (7th Cir. 1998).

A. Conspiracy

As a general rule, a conspiracy cannot exist solely

between members of the same entity. Payton v. Rush-Presbyterian-

St. Luke's Medical Center, 184 F.3d 623, 632-33 (7th Cir. 1999).

This rule applies to government entities as well as private

corporations. Wright v. Illinois Department of Children & Family

Services, 40 F.3d 1492, 1508 (7th Cir. 1994). "[M]anagers of a

corporation jointly pursuing its lawful business do not become

'conspirators' when acts within the scope of their employment are

said to be discriminatory or retaliatory." Id. (quoting

Travis v. Gary Community Mental Health Center, Inc., 921 F.2d

108, 110 (7th Cir. 1990), cert. denied, 502 U.S. 812 (1991)).

The Seventh Circuit has indicated that possible exceptions exist.

The rule might not apply if the conspirators were motivated

solely by personal concerns.  See Hartman v. Board of Trustees of

Community College District No. 508, 4 F.3d 465, 470 (7th Cir.

1993); Payton, 184 F.3d at 633 n.9; McCraven v. City of Chicago,

109 F. Supp. 2d 935, 946 (N.D. Ill. 2000).  Another possible

exception is a conspiracy that is part of some broader

discriminatory pattern or which permeates the ranks of the

organization's employees.  See Wright, 40 F.3d at 1508 (quoting

Hartman, 4 F.3d at 470-71); Volk v. Coler, 845 F.2d 1422, 1435

(7th Cir. 1988); McCraven, 109 F. Supp. 2d at 946; Zoch v. City

of Chicago, 1997 WL 89231 *56 (N.D. Ill. Feb. 4, 1997).

As to seven of the plaintiffs (Berry, Gill, Hopson,

Morgan,[13] Noble, Poe, and Terrell), there are allegations of

false arrest.  Plaintiffs contend that these allegations also

involve state police officers who are not employees of IDHS and,

therefore, at least as to these seven plaintiffs, the conspiracy

allegations are not limited to being intracorporate.  There is,

however, no allegation in the Complaint that the police officers

_____

[13]The Complaint in the case sub judice does not allege
that Morgan was arrested.  However, judicial notice has been
taken of the allegations in Berry v. Lindemann, No. 00 C 5540
(N.D. Ill.).  Also, in response to the motion to dismiss,
plaintiffs specifically refer to the allegations in 00 C 5540.

are part of any alleged conspiracy. Only "Defendants" are alleged to have been part of the conspiracy. See Complaint ¶¶ 114, 116, 127. Even treating the allegations of 00 C 5540 as being incorporated in the Complaint, there is no allegation in 00 C 5540 that the police officers conspired with IDHS employees. Moreover, even if there were such an allegation in 00 C 5540, none of the IDHS employees named as defendants in 00 C 5540 are defendants in the case sub judice. Even looking to plaintiffs' answer brief for additional allegations, there is no allegation that the police conspired with the IDHS defendants, only a contention that actions are alleged that were performed by persons besides IDHS employees. See Pl. Answer Br. at 6. There are no allegations of a conspiracy involving persons who were not IDHS employees.[14]

Plaintiffs also refer to defendants acting outside the scope of their employment and having a personal stake in the corporate action. See id. The allegations of the Complaint, however, all involve disciplining employees or denying promotions or work privileges. This is conduct within the scope of employment. See Volk, 845 F.2d at 1435. Cf. Hartman, 4 F.3d at 470. Having a personal stake in what happens is not, by itself, enough to avoid the intracorporate conspiracy doctrine. Instead, the employee must be motivated solely by his or her own

---

[14]Even if the Complaint were to be amended to allege a conspiracy between the officers and IDHS employees, it would also have to be alleged that the false arrests were motivated by a sufficient class-based animus.

personal interest.  _Hartman_, 4 F.3d at 470; _Payton_, 184 F.3d at 633 n.9.  Here, the allegations do not support such a conclusion. _Cf._ _Hartman_, 4 F.3d at 470.

The question then is whether plaintiffs have alleged so many unlawful acts and participation by so many employees that they fall within the exception that the conspiracy has permeated the ranks of IDHS's employees.  In _Volk_, 845 F.3d at 1435, the Seventh Circuit held that "numerous acts [of discrimination] undertaken by several defendants" were sufficient to overcome the intracorporate conspiracy doctrine.  While later cases indicate that _Volk_ went too far, _see_ _Travis_, 921 F.2d at 111; _Hartman_, 4 F.3d at 470, the present case goes well beyond _Volk_.  Here it is alleged that unlawful acts were performed by at least 20 supervisory employees at six different IDHS facilities affecting at least 33 employees, with many employees suffering on multiple occasions.  While the allegations of the Complaint probably constitute multiple conspiracies, not a single conspiracy, that does not appear to affect the analysis.  Plaintiffs have sufficiently alleged a conspiracy that avoids the intracorporate conspiracy bar.  _Cf._ _Zoch_, 1997 WL 89231 at *56.

### B. Class-Based Discrimination

It is well established that a § 1985(3) claim must be motivated by race or other class-based discrimination.  _Payton_, 184 F.3d at 632; _Kyle_, 144 F.3d at 457.  The Seventh Circuit recently repeated that this includes discrimination "against persons based on sex, religion, ethnicity or political loyalty."

Brokaw, 235 F.3d at ___, 2000 WL 1848464 at *17 (quoting Volk, 845 F.2d at 1434). Brokaw specifically holds that religious-based discrimination satisfies § 1985(3)'s requirement of class-based discrimination. Id. Volk, 845 F.3d at 1434-35, holds that gender-based discrimination satisfies § 1985(3). See also Lyes v. City of Riviera Beach, Fla., 166 F.3d 1332, 1338-39 (11th Cir. 1999) (en banc). For present purposes it may be assumed that race, gender, and national origin discrimination are each sufficient to satisfy § 1985(3)'s class-based discrimination requirement. Plaintiffs do not dispute that disfavorable treatment for engaging in First Amendment expression or activities does not by itself satisfy this requirement. Bray v. Alexandria Women's Health Clinic, 506 U.S. 263, 269 (1993); Kyle, 144 F.3d at 457; Grimes v. Smith, 776 F.2d 1359, 1366 & n.12 (7th Cir. 1985); Skolnick v. Doria, 1994 WL 445088 *3 (N.D. Ill. Aug. 16, 1994), aff'd by unpublished order, 103 F.3d 133 (7th Cir. 1996). See also United Brotherhood of Carpenters & Joiners of America, Local 610 v. Scott, 463 U.S. 825, 836-40 (1983) (class-based discrimination under § 1985(3) does not include economic or commercial animus, including antiunion animus). Plaintiffs concede that it must be alleged that the claimed First Amendment violations were motivated by racial, gender, or some other class-based discrimination. They contend this is satisfied by allegations that plaintiffs were discriminated against for opposing racial, gender, and national origin discrimination.

Plaintiffs also point to allegations in the judicially noticed related cases that at least some of the plaintiffs were subjected to racial, gender, and/or national origin discrimination.

Plaintiffs allege that they were retaliated against for opposing employment discrimination and advocating union rights.[15] In Title VII, Congress has established a comprehensive administrative and judicial process for resolving disputes regarding employment discrimination. See Great American Federal Saving & Loan Association v. Novotny, 442 U.S. 366, 372-73 (1979). This includes prohibiting discrimination against an employee for exercising rights under Title VII or for opposing conduct prohibited by Title VII. See 42 U.S.C. § 2000e-3(a). Because the alleged acts of retaliation and discrimination against those who oppose employment discrimination fall within the purview of Title VII, these alleged acts fall outside the purview of § 1985(3). Novotny, 442 U.S. at 378; Perkins v. Silverstein, 939 F.2d 463, 468 (7th Cir. 1991); Benjamin v. Katten, Muchin & Zavis, 1998 WL 25757 *7 (N.D. Ill. Jan. 12, 1998); Klipfel v. Bureau of Alcohol, Tobacco & Firearms, 1996 WL 566452 *5 (N.D. Ill. Sept. 27, 1996).

Congress has also passed comprehensive legislation governing union activity. The National Labor Relations Act

---

[15]The Complaint also refers generally to speaking out on matters of public concern, but neither the Complaint nor any of the judicially noticed documents from the related cases makes allegations of speech on any issues other than employment discrimination or union activities.

("NLRA") contains prohibitions against interfering with union activity or discriminating against persons who exercise such rights. See 29 U.S.C. § 158(a)(1), (3). Retaliation or discrimination against employees for advocating or exercising union rights could fall within the purview of the NLRA and, therefore, outside the purview of § 1985(3). See Morris v. Chem-Lawn Corp., 541 F. Supp. 479, 483-84 (E.D. Mich. 1982). Cf. Travis, 921 F.2d at 110 (§ 1985(2) claim cannot be stated where allegations fall within purview of the Fair Labor Standards Act prohibition on retaliation, 29 U.S.C. § 215(a)(3)). The NLRA, however, is inapplicable to the present situation because IDHS is a state agency that is not covered by the NLRA. 29 U.S.C. § 152(2); International Association of Machinists & Aerospace Workers v. National Labor Relations Board, 133 F.3d 1012, 1015 (7th Cir.), cert. denied, 525 U.S. 813 (1998). The First Amendment, not the NLRA, prohibits public employers' retaliation or discrimination because of employees advocating or exercising union rights. Air Line Pilots Association v. Miller, 118 S. Ct. 1761, 1763-64 (1998). Therefore, the claims based on antiunion conduct do not fall outside the purview of § 1985(3) because of federal labor legislation. Nevertheless, the antiunion animus claims in this case still fall outside the purview of § 1985(3). A § 1985(3) claim cannot be based solely on an antiunion animus. Scott, 463 U.S. at 839-40. Such a claim must be based on discriminating against a particular class of people for advocating union rights, for example, discriminating against

African-Americans who advocate union rights.  In the present
case, though, once class-based discrimination is added, the claim
still falls within the purview of Title VII.  Disciplining
employees because they were African-Americans, Whites, East-
Indians, Filipino-Americans, Lebanese-Americans, Females, or
Males who advocated union rights is a claim that falls within the
purview of Title VII and, therefore, outside the purview of
§ 1985(3).

As to seven plaintiffs, it is alleged that they were
falsely arrested.  This is alleged to be in retaliation for
opposing discrimination and therefore still falls within the
purview of Title VII and outside the purview of § 1985(3).  But
even if the Complaint were viewed as containing false arrest
claims distinct from an adverse employment action against these
plaintiffs, the claims would still fail as § 1985(3) claims.
There is no allegation in the Complaint of any racial, gender, or
national origin based discrimination.  The Complaint does not
even allege the race or national origin of any plaintiff,[16] an
essential allegation if race or national origin discrimination is
to be alleged.  See Payton, 184 F.3d at 632.  The complaint in
00 C 5540, alleges that plaintiffs Berry, Bill, Morgan, and Noble

---

[16]As to thirteen plaintiffs, their race or national
origin is alleged in pleadings in the related cases for which
judicial notice has been taken.  As to most plaintiffs, gender
can be inferred from the plaintiff's name.

were discriminated against because they were African-American.[17] However, none of the individual defendants in 00 C 5540 are also defendants in the case sub judice. Therefore, even incorporating the allegations of 00 C 5540, there is no allegation that any defendant in the case sub judice caused any plaintiff to be arrested because of race. Therefore, a § 1985(3) claim of racially motivated false arrests is not sufficiently alleged.[18]

Plaintiffs have failed to allege any cognizable violation of § 1985(3). Since no § 1985(3) claim is stated, the § 1986 claims necessarily fail as well. Perkins, 939 F.2d at 472; Grimes, 776 F.2d at 1363 n.4; Williams v. Holcomb, 1998 WL 175874 *3 (N.D. Ind. Feb. 11, 1998). Because no § 1985 or § 1986 claim is stated, plaintiffs' entire complaint is subject to dismissal.

## V.  42 U.S.C. § 1983

Where deficiencies in allegations can be cured, a plaintiff may be provided with the opportunity to amend. See Health Cost Controls v. Skinner, 44 F.3d 535, 538 (7th Cir.

---

[17]The allegation of discrimination is contained in the Title VII count in which it is alleged that they were treated differently than others accused of abuse. It is not expressly alleged in the false arrest count that the false arrests were because of the plaintiffs' race.

[18]There is also no sufficient allegation of a conspiracy to commit false arrests. Of the possible seven arrests, four to six centered around the same accusation of patient abuse at the Howe Center. Therefore, there would not appear to be a sufficient number of incidents to avoid application of the intracorporate conspiracy bar. Cf. Wright, 40 F.3d at 1508.

1995); Casteel v. Pieschek, 3 F.3d 1050, 1056 (7th Cir. 1993).
The opportunity to amend need not be provided where it would be
futile. See General Electric Capital Corp. v. Lease Resolution
Corp., 128 F.3d 1074, 1085 (7th Cir. 1997); Naguib v. Illinois
Department of Professional Regulation, 986 F. Supp. 1082, 1097
(N.D. Ill. 1997). Although the § 1985 deficiencies do not appear
to be curable, plaintiffs may have viable claims pursuant to 42
U.S.C. § 1983.

Here, the Complaint contains no specific reference to
§ 1983. While that would not be fatal to satisfactorily stating
a claim under that provision, it was unnecessary to consider any
§ 1983 claim because, in response to the motion to dismiss,
plaintiffs make no argument that they state a cognizable § 1983
claim. See Kirksey, 168 F.3d at 1041-42; Stransky, 51 F.3d at
1335. However, they do state that, in the event the § 1985
conspiracy claims fail, they desire to amend their complaint to
allege § 1983 claims. Pl. Answer Br. at 7. Since defendants are
state actors, claims of discriminatory employment practices,
McPhaul v. Board of Commissioners of Madison County, 226 F.3d
558, 564 (7th Cir. 2000); Trigg v. Fort Wayne Community Schools,
766 F.2d 299, 301-02 (7th Cir. 1985), First Amendment
retaliation, Myers v. Hasara, 226 F.3d 821, 825-28 (7th Cir.
2000); Power, 226 F.3d at 819-20, and false arrest, Marks v.
Carmody, 234 F.3d 1006, 1009 (7th Cir. 2000); Williams v.
Heavener, 217 F.3d 529, 531-32 (7th Cir. 2000), are all
cognizable under § 1983. Unlike § 1985, a conspiracy need not be

alleged, First Amendment and false arrest claims are cognizable even absent a racial animus, and Title VII does not preclude bringing § 1983 employment discrimination claims, <u>Wudtke v. Davel</u>, 128 F.3d 1057, 1063-64 (7th Cir. 1997); <u>Trigg</u>, 766 F.2d at 301-02.

Before permitting plaintiffs to amend, other issues raised by defendants should be considered to determine whether all or any aspects of a possible amendment would be futile. Essentially, the same statute of limitations applies to § 1985 and § 1983. Therefore, the statute of limitations contentions raised by defendants would apply equally to a § 1983 claim. Also, the arguments regarding collateral estoppel, <u>res judicata</u>, duplicative litigation, and severance would also apply to possible § 1983 claims.

## VI.  STATUTE OF LIMITATIONS

Like § 1985, § 1983 incorporates the two-year limitation period contained in 735 ILCS 5/13-202. <u>Eison v. McCoy</u>, 146 F.3d 468, 170 (7th Cir. 1998); <u>Sanders v. Venture Stores, Inc.</u>, 56 F.3d 771, 775 n.2 (7th Cir. 1995); <u>Wilson v. Giesen</u>, 956 F.2d 738, 740-41 & n.4 (7th Cir. 1992). Federal law determines when the claim accrues. <u>Kelly v. City of Chicago</u>, 4 F.3d 509, 510 (7th Cir. 1993). State law generally controls as to tolling. <u>Ashafa v. City of Chicago</u>, 146 F.3d 459, 463-64 (7th Cir. 1998); <u>Kelly</u>, 4 F.3d at 510. The applicable version of 735 ILCS 5/13-217 provides that a plaintiff may voluntarily dismiss a

timely filed lawsuit and will have at least one year to refile it as long as the plaintiff has not previously refiled the lawsuit. See Evans v. Lederle Laboratories, 167 F.3d 1106, 1110 & n.5 (7th Cir.), cert. denied, 528 U.S. 929 (1999); Rodgers-Orduno v. Cecil-Genter, 312 Ill. App. 3d 1150, 728 N.E.2d 62, 64-65 (2d Dist.), appeal denied, 189 Ill. 2d 701, 734 N.E.2d 898 (2000); Lydon v. Eagle Food Centers, Inc., 297 Ill. App. 3d 90, 696 N.E.2d 1211, 1214 (2d Dist. 1998).

In their motion to dismiss, defendants contended that the Complaint was deficient because it failed to allege the dates of any events and therefore failed to allege that any of the alleged acts fell within the statute of limitations period. That contention is without merit. Failure to comply with the statute of limitations is an affirmative defense. See Fed. R. Civ. P. 8(c). Compliance with the statute of limitations need not be pleaded in the complaint and the timeliness of a claim can only be raised on a motion to dismiss if the plaintiff has pleaded facts showing that the claim is untimely. See Tregenza, 12 F.3d at 718; Early, 959 F.2d at 79; United States ex rel. Bidani v. Lewis, 1999 WL 163053 *4 (N.D. Ill. March 12, 1999). Since the Complaint alleges no dates, the statute of limitations defense could only be considered to the extent that the judicially noticed related cases show that a particular plaintiff cannot possibly comply with the statute of limitations.

The related cases show that Catlett was discharged in 1997 and that Mungai was discharged in June 1998. Since the

Complaint in the case sub judice was not filed until September 2000, Catlett cannot have any claim that accrued within two years of the filing of the Complaint. Any wrongful action taken against him had to have occurred no later than when he was discharged. The statute of limitations would bar any claim that Catlett might attempt to make in an amended pleading.[19] Catlett's claims will be dismissed with prejudice and he will not be permitted to file an amended complaint.[20] Mungai also cannot have any claims that accrued within two years of the filing of the Complaint. Any wrongful conduct taken against him must have occurred no later than his June 1998 discharge. However, since a related case (98 C 4429) is still pending, the possibility exists of dismissing that case and instead including those claims in the case sub judice. But, since IDHS is the only defendant in 98 C 4429, Mungai would not have any remaining timely claims against the individual defendants. He would be limited to the Title VII claim against IDHS and a § 1983 claim for injunctive relief to the extent he is seeking reinstatement. Any claim that Mungai brings against the individual defendants will be dismissed with prejudice on statute of limitations grounds.

---

[19]If Catlett succeeds in his appeal of 98 C 3273 and his claims are reinstated, then there would be the possibility of dismissing that case and incorporating his remaining timely claims in the present case.

[20]As is discussed in § VII infra, Catlett's claims are, in part, also subject to dismissal on res judicata and collateral estoppel grounds.

By not alleging dates as to most plaintiffs, those plaintiffs have avoided the possibility of a statute of limitations defense being raised on a motion to dismiss. That does not mean, however, that all claims are timely. Moreover, to the extent claims actually are based on misconduct occurring more than two years prior to the September 8, 2000 filing of the Complaint, plaintiffs and counsel would possibly be in violation of Fed. R. Civ. P. 11 if they include such claims without having a nonfrivolous basis for contending they are nevertheless within the statute of limitations. In filing an amended complaint, plaintiffs shall not include any claims for which they cannot make a good faith contention of timeliness.

## VII. COLLATERAL ESTOPPEL AND RES JUDICATA

Since the prior cases were all filed in federal court and contain claims based on federal law, federal law applies in determining the collateral estoppel or res judicata effect of the prior cases. Heck v. Humphrey, 512 U.S. 477, 488 n.9 (1994); EEOC v. Harris Chernin, Inc., 10 F.3d 1286, 1289 n.4 (7th Cir. 1993); Teamsters Local 282 Pension Trust Fund v. Angelos, 762 F.2d 522, 525 (7th Cir. 1985). See also Havoco of America, Ltd. v. Freeman, Atkins & Coleman, Ltd., 58 F.3d 303, 307 & nn.6-7 (7th Cir. 1995). A federal judgment has a collateral estoppel effect if "(1) the issue sought to be precluded is the same as that involved in the prior action; (2) the issue was actually litigated; (3) the determination of the issue was

essential to the final judgment; and (4) the party against whom estoppel is invoked was fully represented in the prior action." Havoco, 58 F.3d at 307. A federal judgment has a res judicata effect if there is "(1) a final judgment on the merits in an earlier action, (2) an identity of the cause of action in both the earlier and the later suit, and (3) an identity of parties or their privies in the two suits." Tice v. American Airlines, Inc., 162 F.3d 966, 970 (7th Cir. 1998), cert. denied, 527 U.S. 1036 (1999); Harris Chernin, 10 F.3d at 1289. A pending appeal does not prevent the application of collateral estoppel or res judicata. Prymer v. Ogden, 29 F.3d 1208, 1213 n.2 (7th Cir.), cert. denied, 513 U.S. 1057 (1994) (dictum noting that "it is clear that the [Seventh Circuit] has adhered to the general rule in American jurisprudence that a final judgment of a court of first instance can be given collateral estoppel effect even while an appeal is pending"); Rice v. Department of Treasury, 998 F.2d 997, 999 (Fed. Cir. 1993); Abbott Laboratories v. Dey, L.P., 110 F. Supp. 2d 667, 671 (N.D. Ill. 2000); Krislov v. Aetna Plywood, Inc., 1999 WL 1251530 *4 (N.D. Ill. Dec. 20, 1999); Petit v. City of Chicago, 1999 WL 66539 *5 (N.D. Ill. Feb. 8, 1999); Pharmacia & Upjohn Co. v. Novopharm Ltd., 1999 WL 63695 *3 (N.D. Ill. Feb. 4, 1999); Charles A. Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice & Procedure § 4433 at 308-10 (1981).

IDHS, Peters, Baker, and Formigoni were parties to Catlett's prior lawsuit. See Catlett v. Peters, No. 98 C 3273 (N.D. Ill.), appeal pending sub nom., Catlett v. Woodfin,

No. 00-2145 (7th Cir.). Catlett's claims in the case sub judice
apparently are against IDHS, former IDHS Director Peters, current
IDHS Director Baker, IDHS EEO Director Steve Hunter, Madden
Center Hospital Director Patricia Madden, Madden Center Director
of Personnel and Human Resources Suzanne Varso, and Madden Center
Facility Director Formigoni. The identity of causes of action
requirement is satisfied if the new claim "arises from the same
incident, events, transaction, circumstances, or other factual
nebula as a prior suit." Okoro v. Bohman, 164 F.3d 1059, 1062
(7th Cir. 1999). Clearly, Catlett's claims in the case sub
judice arise from the same common core as his prior allegations
regarding his discharge and discipline. The § 1985 and § 1986
claims Catlett has already made and any possible § 1983 claims he
would make against IDHS, Peters, Baker, and Formigoni are barred
by res judicata. Cf. id. Res judicata does not apply to the
other possible defendants (Hunter, Madden, and Varso) who were
not parties to Catlett's prior lawsuit. See Conner v. Reinhard,
847 F.2d 384, 394-96 (7th Cir.), cert. denied, 488 U.S. 856
(1988) (government employees sued in their individual capacity
are not in privity with their employer, which was previously
sued); Beard v. O'Neal, 728 F.2d 894, 896-97 (7th Cir.), cert.
denied, 469 U.S. 825 (1984) (government employees sued in their
individual capacities are not in privity with another employee of
the agency who was previously sued in his individual capacity).

Hunter, Madden, and Varso may still be entitled to
collateral estoppel as regards Catlett's possible claims against

them.  In <u>Catlett II</u>, 1999 WL 1269196 at *7-8, Catlett's claim that he was discriminated against for participating in union activities was dismissed on the ground that he could not show that he was treated less favorably than those who did participate in union activities.  Clearly that issue was actually litigated and the finding of no discrimination was essential to the judgment eventually entered.  As to every defendant in the case <u>sub judice</u>, Catlett is estopped from contending that he was treated discriminatorily because of his union activities.  This would preclude a § 1983 claim based on such a claim.  It is also possible that the verdict on the retaliation claim would have a <u>res judicata</u> effect on a possible § 1983 First Amendment retaliation claim.  However, the parties have not provided enough information about the trial and verdict to resolve that issue.  To the extent stated, Catlett's claims are barred by <u>res judicata</u> and collateral estoppel, and, as discussed in § VI <u>supra</u>, his cause of action is otherwise barred as untimely.  Because the grounds for dismissal of Catlett's cause of action are particular to his circumstances, it is appropriate to presently enter a final judgment as to Catlett.  <u>See</u> Fed. R. Civ. P. 54(b).  There is no just reason for delaying entry of judgment.

IDHS was the only defendant to Velasco's prior lawsuit. <u>See Velasco v. IDHS</u>, No. 99 C 4314 (N.D. Ill.), <u>appeal pending</u>, No. 00-1391 (7th Cir.).  <u>Res judicata</u> bars Velasco's present claims against IDHS.  As to individual defendants in the case <u>sub judice</u>, collateral estoppel would apply.  <u>Velasco II</u>, 2000 WL

89692 at *6-9, shows that the issue of whether Velasco was terminated because of deficient performance was actually litigated and necessary to the judgment that was entered, which included dismissal of a Title VII retaliation claim. On summary judgment, it was held that undisputed facts showed that plaintiff was discharged for deficient performance. That fact would preclude any present § 1983 claim that plaintiff was discharged because of discrimination, retaliation, or for exercising First Amendment rights. Velasco's claims will be dismissed with prejudice and she will not be permitted to join in any amended complaint. Because the grounds for dismissal of Velasco's cause of action are particular to her circumstances, it is appropriate to presently enter a final judgment as to Velasco. See Fed. R. Civ. P. 54(b). There is no just reason for delaying entry of judgment.

A judgment has also been entered in plaintiff Thompson's prior lawsuit. See Thompson v. John J. Madden Mental Health Center, No. 99 C 2558 (N.D. Ill.), appeal pending, No. 00-4297 (7th Cir.). None of the individual defendants in the case sub judice are parties to 99 C 2558. The judgment in 99 C 2558 was entered after defendants filed their motion to dismiss, but before they filed their reply. Defendants do not specifically invoke res judicata or collateral estoppel regarding Thompson. It is possible that the claims of Thompson in the case sub judice involve discipline that occurred subsequent to the events that were the subject of 99 C 2558. If so, it is unlikely that

Thompson would be collaterally estopped from raising such claims.
To the extent, however, Thompson attempts to raise § 1983 race
discrimination or retaliation claims as to the same discipline
that was the subject of 99 C 2558, any such claims are likely to
be collaterally estopped by the findings of no discrimination and
no retaliation contained in Thompson, 2000 WL 1780348 at *3-5.
In filing an amended complaint, it is expected that Thompson will
not attempt to raise any claims that would be barred by
collateral estoppel.

Diab's prior lawsuit has been dismissed.  See Diab v.
IDHS, No. 98 C 605 (N.D. Ill.).  However, no formal judgment has
been entered and defendants do not now invoke collateral estoppel
or res judicata.  Similarly, subsequent to the filing of all
briefs, a lawsuit brought by Kirsch and Lauder was dismissed with
prejudice, but no formal judgment was entered.  See Lauder v.
IDHS, No. 99 C 7514 (N.D. Ill.).  Arguably, the dismissals of
both 98 C 605 and 99 C 7514 are nevertheless final for purposes
of collateral estoppel and/or res judicata.  See Nagle v. Lee,
807 F.2d 435, 438-39, 441-42 (5th Cir. 1987).  See also Gilldorn
Savings Association v. Commerce Savings Association, 804 F.2d
390, 393 (7th Cir. 1986); Miller Brewing Co. v. Joseph Schlitz
Brewing Co., 605 F.2d 990, 995-96 (7th Cir. 1979), cert. denied,
444 U.S. 1102 (1980).  However, since defendants have not yet
invoked collateral estoppel or res judicata based on these two
cases, it will not presently be considered.  Alternatively, any
claims of Kirsch and Lauder that may be included in an amended

complaint are possibly barred by a settlement, but no showing has been made that a settlement has actually been reached. No order will now be entered barring Diab, Kirsch, or Lauder on grounds of collateral estoppel, res judicata, or settlement.

## VIII. SEVERANCE, DUPLICATIVE LAWSUITS, AND RELATEDNESS

### A. Severance

Before determining whether any of the cases are duplicative and, if so, the appropriate action to take, it will first be considered whether it was appropriate to file one action joining all 33 plaintiffs. Defendants contend that this action should be severed into 33 individual actions (less any plaintiff whose cause of action is dismissed in its entirety). Plaintiffs instead propose severance into six separate cases, divided up according to the particular facility at which each plaintiff is employed.

Rule 20(a) of the Federal Rules of Civil Procedure provides in part: "All persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all these persons will arise in the action." Thus, there are two independent requirements for permissive joinder: (1) arising out of the same transaction, occurrence, or series of transactions or occurrences, and (2) a common question of law or fact. Byers v.

<u>Illinois State Police</u>, 2000 WL 1808558 *1 (N.D. Ill. Dec. 6, 2000).

In determining whether the first requirement is satisfied, "a case-by-case approach is generally pursued because no hard and fast rules have been established." <u>Id.</u> at *2 (quoting <u>Bailey v. Northern Trust Co.</u>, 196 F.R.D. 513, 515 (N.D. Ill. 2000)). Factors that have been considered in determining whether discrimination claims arise from the same transaction, occurrence, or series of transactions or occurrences include the time period during which the alleged acts occurred, whether the acts of discrimination are related, whether there were differing types of adverse employment actions, whether more than one type of discrimination is alleged, whether the same supervisors were involved, whether employees worked in the same department, whether employees were at different geographical locations, and whether a company-wide policy is alleged. <u>See Byers</u>, 2000 WL 1808558 at *3-4; <u>Bailey</u>, 196 F.R.D. at 516.

Even the vague and undetailed allegations contained in the present Complaint (as partially amplified by judicial notice of the related cases), show that no common thread connecting all 33 plaintiffs is contained in the allegations joined in the Complaint. The 33 plaintiffs in this case were employed at six different facilities. The only possible common defendants for all plaintiffs are the current and former Directors of IDHS and the EEO Director of IDHS. No specific allegations are made as to these defendants and no allegation of a specific IDHS-wide policy

is made. According to the allegations, some plaintiffs may have been mistreated for opposing discrimination and some for engaging in union activities. Seven plaintiffs allegedly were subjected to false arrest. Fourteen of the plaintiffs are alleged to have been discharged. Some plaintiffs were suspended, some were transferred, and some were denied promotions. An examination of the allegations in the related cases reveals that at least seven plaintiffs allege they suffered discrimination because they are African-American and at least one plaintiff (who apparently is not African-American) alleges she suffered discrimination for associating with an African-American, while at least one plaintiff alleges she suffered discrimination because she is White. At least two plaintiffs allege discrimination because they were male and at least one plaintiff alleges discrimination because she is female. At least two plaintiffs allege discrimination because they are East Indian, one because she is Filipino-American, and one because he is Lebanese-American. Given the divergent and perhaps conflicting allegations, it was inappropriate to join all 33 plaintiffs in a single lawsuit.

Plaintiffs suggest that it would be appropriate to have six different cases, dividing up the plaintiffs based on the particularly facility at which each worked. Based on the undetailed allegations contained in the Complaint, that is a possibility. In general, it is alleged that the same supervisors are responsible for the discrimination against all plaintiffs from a particular facility. As to the particular discrimination

that occurred, not enough details are alleged to determine if the claims of the plaintiffs at each facility are too divergent to join in a single lawsuit. For present purposes, it will be assumed that they may appropriately be included in a single complaint. Before filing amended complaints, however, plaintiffs should consider whether all plaintiffs at a particular facility are appropriately joined. Once more factual detail is revealed in particular cases, it may be determined that further severance is necessary. That determination, to the extent it must be made by the court, will largely be left for another day. Also, whether the claims of all plaintiffs should be tried together is an issue distinct from whether the claims may all be joined in a single complaint and need not be resolved until after discovery is completed. See Fed. R. Civ. P. 20(b), 42.

This court's rules do not have a specific procedure for dividing up a single case into six separate cases with six separate case numbers. See generally N.D. Ill. L.R. 40.1-40.4. Instead, the procedure to follow is that the amended complaint to be filed in the case sub judice is to be limited to those plaintiffs who were employed at the Madden Center, since that is the facility with the greatest number of employees.[21] As to the

---

[21]Also, of the 13 plaintiffs employed at the Madden Center, only four have filed other lawsuits. Of the other 20 plaintiffs, 13 are plaintiffs in other lawsuits. It may turn out that most of the other 20 plaintiffs will amend or join in other pending lawsuits. Also, the Madden Center plaintiffs should consider whether it is appropriate for all of them to be joined in a single case. If it would be inappropriate for any of the

facilities other than the Madden Center, plaintiffs may file complaints that will be assigned new case numbers and that will be randomly assigned to judges in accordance with this court's usual assignment procedures. See id. 40.1(a). Any newly numbered cases are not to be treated as the refiling of the case sub judice that would be directly assigned to this bench. See id. 40.3(b)(2). It is left to plaintiffs to initially determine whether all plaintiffs at a particular facility should be in a single complaint or otherwise divided amongst multiple cases. Also, it is left to plaintiffs to determine whether, as to some or all plaintiffs, they would instead prefer to move to amend any of the pending cases to add plaintiffs and/or claims. Further, the Federal Rules of Civil Procedure provide that the misjoinder of parties is not a basis for dismissal. See Fed. R. Civ. P. 21. Severance is not to be effected in a manner that results in a dismissal prejudicing a substantial right. Elmore v. Henderson, 227 F.3d 1009, 1012 (7th Cir. 2000); Sabolsky v. Budzanoski, 457 F.2d 1245, 1249 (3d Cir.), cert. denied, 409 U.S. 853 (1972). The filing of new complaints under new case numbers is not to be considered the dismissal of the original case and the refiling of new cases; it is a severance pursuant to Rule 21. The new complaints should be considered to be the continuation of the case sub judice, which was filed on September 8, 2000. See

Madden Center plaintiffs to join in the amended complaint to be filed in the case sub judice, such plaintiffs should file a new complaint in a newly numbered case or amend a pending complaint.

_Elmore_, 227 F.2d at 1249. As long as the new complaints or amendments of other complaints are filed within a reasonable period of time,[22] for statute of limitations purposes, they should be considered to have been filed as of September 8, 2000, at least as to defendants who are named in the present Complaint.

## B. Duplicative Lawsuits

In _Serlin v. Arthur Andersen & Co._, 3 F.3d 221, 223 (7th Cir. 1993) (quoting _Ridge Gold Standard Liquors, Inc. v. Joseph E. Seagram & Sons, Inc._, 572 F. Supp. 1210, 1213 (N.D. Ill. 1983)), the Seventh Circuit held that "[a]s a general rule, a federal suit may be dismissed 'for reasons of wise judicial administration . . . whenever it is duplicative of a parallel action already pending in another federal court.' . . . District courts are accorded 'a great deal of latitude and discretion' in determining whether one action is duplicative of another, but generally, a suit is duplicative if the 'claims, parties, and available relief do not significantly differ between the two actions.'" Under such circumstances, there is no "first filed doctrine" requiring that the later-filed case be dismissed. _See Central States, Southeast & Southwest Areas Pension Fund v. Paramount Liquor Co._, 203 F.3d 442, 444 (7th Cir. 2000). To the extent dismissal of one of the cases is appropriate, some cases

---

[22]It is appropriate to permit a reasonable, but not unlimited, time period to file the new complaints or amendments. _Cf. Bailey v. Gilmore_, 5 F. Supp. 2d 587, 591 (N.D. Ill. 1998). Up to thirty days from the entry of today's order will be presumed to be a reasonable period of time.

hold that there is a presumption that the later-filed case be dismissed.  See Indianapolis Motor Speedway v. Polaris Industries, Inc., 2000 WL 777895 *1-2 (S.D. Ind. April 28, 2000). One possible ground for overcoming the first-filed presumption is that the second-filed case is more comprehensive.  Paramount Liquor, 203 F.3d at 444.  Generally, dismissal of one of the cases is inappropriate if it will adversely affect a litigant's interests.  Id. at 444.  But compare Serlin, 3 F.3d at 224 (where the adverse effect is the result of the litigant's own failure to follow rules, dismissal is still within the court's discretion).

As to the 20 plaintiffs who were not employed at the Madden Center, the applicability of the rule stated in Serlin will be left for determination in any newly numbered cases. Plaintiffs, however, should consider the applicability of this rule in determining whether it is more appropriate to amend and/or join in pending cases or proceed in a newly numbered case. As to the Madden Center employees who will be filing an amended complaint in the case sub judice, the effect of previously filed cases will be considered as to the four plaintiffs who have made claims in other lawsuits.

As previously discussed, Catlett's cause of action will be dismissed with prejudice based on statute of limitations, res judicata, and collateral estoppel grounds.  The applicability of

<u>Serlin</u> need not be considered.  Catlett is not to be included in any amended complaint.

As previously discussed, any § 1983 claims Mungai might bring against the individual defendants would be barred by the statute of limitations.  Any claims he might still be able to bring against IDHS are already pending in another case in which discovery has closed and there is a fully briefed motion for summary judgment.  It does not appear to be appropriate to include Mungai in a case with the other Madden Center plaintiffs.  Mungai's cause of action will be dismissed in its entirety and no claims of Mungai may be included in the amended complaint.  Because the grounds for dismissal of Mungai's cause of action are particular to his circumstances, it is appropriate to presently enter a final judgment as to Mungai.  <u>See</u> Fed. R. Civ. P. 54(b).  There is no just reason for delaying entry of judgment.

As to Thompson, it was previously indicated that any claims he brings in the amended complaint should avoid duplication of any that were or could have been included in his prior lawsuit.

Diab's other lawsuit is presently dismissed with a pending motion to vacate the dismissal.  The extent to which Diab's present claims overlap with the prior suit is unclear.  No specific order will be entered, but Diab should avoid duplication

and not include himself in the amended complaint if it would simply be a duplication of his previously filed case.

## C. Relatedness

The three cases that plaintiffs request be taken as related to the case _sub judice_ all involve plaintiffs employed at facilities other than the Madden Center. Those cases, therefore, are not related to the claims that will be included in the amended complaint in the case _sub judice_. The relatedness motion will be denied.

IT IS THEREFORE ORDERED that:

(1) Defendants' motion to dismiss plaintiffs' complaint and for severance [9] is granted in part and denied in part. Plaintiffs' motion to consolidate for relatedness [12] is denied. Defendants' motion to stay plaintiffs' motion to consolidate for relatedness [13] is denied as moot.

(2) All official capacity claims are dismissed without prejudice. IDHS may continue as a defendant.

(3) All claims of plaintiffs Arthur Catlett, Joseph Mungai, and Fe Velasco are dismissed. There being no just reason for delay, the Clerk of the Court is directed to enter judgment: (a) in favor of defendants and against plaintiff Arthur Catlett, dismissing Catlett's cause of action with prejudice; (b) in favor of defendants and against plaintiff Joseph Mungai, dismissing Mungai's cause of action with prejudice except that any Title VII

claim as against defendant Illinois Department of Human Services
is dismissed without prejudice; and (c) in favor of defendants
and against plaintiff Fe Velasco, dismissing Velasco's cause of
action with prejudice.

(4) All plaintiffs' claims pursuant to 42 U.S.C. § 1985
and 42 U.S.C. § 1986 are dismissed with prejudice.  Plaintiffs'
complaint is dismissed.  Except as to plaintiffs Arthur Catlett,
Joseph Mungai, and Fe Velasco, dismissal of the complaint is
without prejudice to filing an amended complaint containing
claims pursuant to 42 U.S.C. § 1983.  Such amended complaint is
to be consistent with rulings contained in today's opinion.

(5) The causes of action of plaintiffs Denise Berry,
Joanne Boland, Lester Brodzik, Bonnie Camacho, Frederick Cullin,
Catherine Gill, Derrick Hopson, Patricia Kirsch, Usha Kartan,
Arlette Lauder, Sharon Marquez, Lillian Morgan, Alfreda Noble,
Mir Obaid, Diane Pendleton, Eileen Piskorek, Wanda Poe, James
Settles, and Elizabeth Terrell are severed from this case.  They
are granted leave to file, within a reasonable period of time,
amended pleadings in either newly numbered cases or already
pending related cases (with leave of the judges presiding over
the pending cases).

(6) By February 26, 2001, plaintiffs Evelyn Carreon,
Nasser Diab, Agnes Hayes, Willie Johnson, Tony Johnson, Ruth
Loveless, Essie King Nixon, Ron Simmons, Henry Taylor, William

Thompson, and Bobby Wright shall file an amended complaint in
00 C 5538.  Defendants shall answer or otherwise plead by
March 12, 2001.  Status hearing set for March 21, 2001 at
11:00 a.m.

ENTER:

UNITED STATES DISTRICT JUDGE

DATED:  FEBRUARY        , 2001